256 P.2d 249

**CARLSON v. CARLSON.**

**Nos. 5395 and 5496.**

Supreme Court of Arizona.

April 20, 1953.
Rehearing Denied May 19, 1953.

Snell & Wilmer by Edward Jacobson, of Phoenix, for appellant.

Marshall W. Haislip, of Phoenix, for appellee.

WINDES, Justice.

On April 29th, 1949, appellee, herein designated plaintiff, filed suit against her husband, herein referred to as defendant, for divorce alleging cruel treatment as grounds therefor. In February, 1950, the court rendered judgment granting her a divorce, property settlement, custody of their minor son and $400 per month for his support. Defendant appealed. Thereafter plaintiff sought an order for attorney's fees and costs on appeal and defendant petitioned to modify and vacate the decree. Hearing was had on these supplementary matters and the court reduced the child support to $250 per month and allowed $1250 attorney's fees and costs. Defendant also appealed from this order and by stipulation the two appeals are consolidated.

The first assignment of error presented for our consideration is that the court had no jurisdiction, for the reason that the plaintiff had not been a bona fide resident of the state for a period of one year prior to the filing of her action as required by the provisions of Section 27–803, A.C.A. 1939.

The undisputed facts bearing upon the establishment of plaintiff's Arizona residence are that the plaintiff and defendant were and had been since their marriage in 1942, residents of Chicago, Illinois; that during the winter months it was necessary to remove the minor son to a milder climate for his health. With that end in view and for such purpose, with the approval of the defendant, the plaintiff came to Arizona in January, 1948. Their separation was amicable and he visited her several times between the time of her arrival and the filing of the instant suit. She decided to purchase some property and he assisted her in the selection thereof. This was purchased in June, 1948. During the summer of this year, while he was in Honolulu on business, she visited him. She testified that before she left Chicago her husband said, "Well, now, if everything goes all right and you like Arizona like I used to like it, maybe we will just settle down there and I will commute." She likewise testified that she decided to make this state her permanent residence in February or March following her arrival.

To support her charge of cruelty she related several quarrels and disagreements, most of which arose over money matters. Some of these were somewhat ancient history, beginning in 1943. Physical violence so she stated was used on one occasion, but she related that she always forgave him. It clearly appears from the reading of her testimony that these claimed acts of cruelty were not the cause of her leaving Chicago and coming to Arizona, nor is there any indication that the defendant agreed that she establish a separate residence in Arizona or that there was any understanding between them that they were to permanently live apart and sever the marital relationship.

■ The general rule by the great weight of authority is that the wife must adopt the residence of the husband and that she cannot without just cause maintain a separate domicile. There are sound reasons for this rule. The law imposes upon the husband the burden and obligation of the support, maintenance and care of the family and almost of necessity he must have the right of choice of the situs of the home. There can be no decision by majority rule as to where the family home shall be maintained, and a reasonable accompaniment of the imposition of the obligations is the right of selection. The violation of this principle tends to sacrifice the family unit, the entity upon which our civilization is built. The principle is not based on the common law theory of the merger of the personality of the wife with that of the husband; it is based on the theory that one domicile for the family home is still an essential in our way of life.

■ There are certain exceptions to the general rule, and one is that where the husband has been guilty of misconduct or ill treatment that would warrant abandonment of the marriage relationship, the wife is released from the duty of remaining in the family domicile and may establish an independent residence. 17 Am.Jur., Divorce and Separation, § 258. The evidence shows such was not the situation in the case at bar. Any and all treatment prior to plaintiff's removal to Arizona upon which she bases her claim for divorce has been condoned, and admittedly the claimed ill treatment of the defendant was not the cause of her removal to Arizona and her attempt to establish a separate residence. We have heretofore held in harmony with the foregoing principles that, for a wife to establish jurisdictional residence for the purpose of instituting divorce proceedings, she must have left the family domicile because of some fault of the husband. Sneed v. Sneed, 14 Ariz. 17, 123 P. 312, 40 L.R.A., N.S., 99. This principle was recognized by us in the recent case of Grimditch v. Grimditch, 71 Ariz. 198, 225 P.2d 489. It is true that she testified that she intended to make this her permanent home more than a year prior to the filing of her complaint, but the law does not grant her the right to independently change her mind and give legal effect to such intention under the facts here existing.

■ Another exception to the general rule that a wife is bound to the residence of her husband, recognized by some courts, is that where the parties have mutually abandoned the marriage relationship and by agreement permanently broken its ties which the common domicile is supposed to protect, the wife may establish a separate residence. Under such circumstances, it is held that the reason for the rule having vanished, it will not be enforced. 17 Am. Jur., Domicil, § 48.

■ While the defendant unquestionably consented to the plaintiff's coming to Arizona for the benefit of the health of the

minor child and consented to her purchasing property here, there is no evidence whatever that the parties mutually agreed to discontinue their relationship as husband and wife. In fact, the evidence is to the contrary and shows they continued their marital association thereafter.

It is claimed that the court erred in awarding to the plaintiff attorney's fees and costs for the reason that it appeared that she was financially able to pay these items. There was much evidence concerning the financial condition of the respective parties, and we cannot say therefrom that the court abused its discretion in making such allowance.

There are many other assignments of error but in view of our ruling it is unnecessary to discuss them.

We hold that the court had no jurisdiction to try the case but did have the power to try the jurisdictional question and allow the wife attorney's fees and costs in connection therewith; that the order allowing the plaintiff attorney's fees and costs was valid, and the judgment is therefore reversed with instructions to dismiss the complaint and vacate all orders heretofore made except the order allowing the plaintiff attorney's fees and costs. Each party is to pay his own costs on appeal.

STANFORD, C. J., and PHELPS, LA PRADE and UDALL, JJ., concur.