Johnson, J.,
dissenting: I have no fuss with the majority’s determination that the mode of transportation to the soccer game— in the uncovered bed of a privately owned pickup truck driven by a teenaged teammate—was “authorized by the Insured Person’s Participating School” within the meaning of the subject insurance policy, notwithstanding tire nightmarish stupidity of that authori *151 zation. Where I part company with the majority is in its determination that such “travel [was] paid for or subject to reimbursement by the Participating School,” as required by the clear language of die Mutual of Omaha policy. Specifically, if the school has no obligation to pay for the student’s travel or no obligation to reimburse the student for his or her out-of-pocket travel expenses, then the student has no right to be reimbursed and the subject to reimbursement proviso has not been met.
I believe the majority made its decision easier to reach by placing the burden on Mutual of Omaha. But it was not Mutual of Omaha’s obligation to prove that Jesus Rodriguez was not covered by the policy issued to the Kansas State High School Activities Association (Association), as will be discussed below. Before proceeding, however, I would note that this case presents a somewhat unique circumstance in that the Association contracted with Mutual of Omaha for the insurance policy, but the covered entities are the participating schools and the potential claimants are students at those schools. Nevertheless, I will occasionally refer to Mutual of Omaha as the “insurer” and Rodriguez as the “insured.”
Further, in allocating burdens in an insurance policy dispute, one first needs to understand if the question presented involves: (1) whether die particular claim or claimant is covered by the policy (“coverage”); or (2) whether a policy exclusionary clause exempts or precludes an otherwise covered claim or claimant (“exclusion”). For example, consider that a policyholder submits a homeowners’ policy claim under the personal liability portion of the policy to pay for a neighbor’s bodily injury incurred when tíre policyholder’s 19-year-old, stiU-hving-at-home son hit the neighbor in anger. A coverage question would be whether the policy language extended the policy’s liability protection to cover the acts of an adult son who was still living in the household, i.e., whether the son was an insured person. If so, an exclusion question would be whether the exclusionary clause prohibiting coverage for intentional torts would apply to permit a denial of the otherwise covered claim.
Applying that distinction to this case, one can see that we are dealing with a coverage question, i.e., whether Rodriguez was an insured person. Mutual of Omaha is not asserting that Rodriguez *152 would have been a covered person but for an exclusionary clause. To the contrary, Mutual of Omaha is simply asserting that Rodriguez was not engaging in an insured activity at the time he was injured, i.e., was not covered by the policy.
The coverage versus exclusion distinction is important because it determines who has the burden of proof. The burden allocation has been described as follows:
“Where, as here, an insured files suit against its insurer seeking coverage under a policy of insurance, the insured has the ‘burden of proving he or she falls within the coverage provisions’ of the policy. Brumley v. Lee, 265 Kan. 810, 963 P.2d 1224, 1232 (Kan. 1998). More specifically, ‘the insured has the burden of proof to establish the nature and extent of any loss and that the loss claimed was caused by one of tire perils insured against (“covered”) by the policy.’ Kansas Farm Bureau Ins. Co. v. Reynolds, 16 Kan. App. 2d 326, 823 P.2d 216, 218 (Kan. App. 1991) (internal quotation marks omitted). Assuming the insured can satisfy this burden, the insurer then has the burden of proving that any exclusionary clauses within the policy apply to preclude coverage. Exploration Place, Inc. v. Midwest Drywall Co., 277 Kan. 898, 89 P.3d 536, 541 (Kan. 2004).” Advantage Home-building, LLC v. Maryland Cas. Co., 470 F.3d 1003, 1008 (10th Cir. 2006).
Accordingly, the initial burden was on Rodriguez to establish that he was covered by the Association’s policy through Mutual of Omaha at die time he was injured. The insurance policy defined the persons covered by the policy as “[sjtudents participating in interscholastic competition or activities under die jurisdiction of the [Association] including . . . covered travel as defined under the policy.” Rodriguez was not yet participating or competing when he was injured, so he could only get within the class of insureds by proving that he was engaged in “covered travel.” As the majority notes, the policy definition of “covered travel” not only requires that die mode of travel be authorized by the school, but also that the travel must be “paid for or subject to reimbursement by the Participating School.” I see no proof in the record that Rodriguez’ mode of transportation to the soccer game was paid for or subject to reimbursement by Sumner Academy, i.e., no proof tiiat he “falls widiin the coverage provisions” of the policy. See Brumley v. Lee, 265 Kan. 810, 823, 963 P.2d 1224 (1998) (reciting general rule that insured has burden of proving coverage).
*153 The owner of the pickup in which Rodriguez was riding to the soccer game did not seek payment from Sumner Academy for his travel expenses, and Sumner Academy did not pay for those travel expenses. Apparently, no student in a similar situation has ever sought payment from Sumner Academy for personal vehicle travel expenses. A school administrator declined to answer the question of whether the school would have paid the travel expenses, if a claim for reimbursement had been made. But the majority appears to be swayed by testimony, together with its independent assessment, that nothing in the school policies or administrative guidelines would have prohibited Sumner Academy from gratuitously paying the pickup owner’s travel expenses from an activity fund, if a claim had been made. In my view, the possibility that the school might malee a gift to a student equal to the expenses of private travel to a sporting event at some time in the future when the building administrator was feeling particularly charitable and the activity fund was flush with cash does not make Rodriguez’ mode of transportation “covered travel” under the language of the insurance policy.
Turning to a construction of the insurance policy language, I note that a court should review the policy as a whole and endeavor to ascertain the intent of the parties from the language used, taking into account the parties’ situation, the nature of the subject matter of the policy, and tire purpose to be accomplished. Bussman v. Safeco Ins. Co. of America, 298 Kan. 700, 707, 317 P.3d 70 (2014). Moreover, as the majority points out, “[w]e assign language in an insurance policy the meaning a reasonably prudent insured would understand it to have. See Marshall v. Kansas Med. Mut. Ins. Co., 276 Kan. 97, 111, 73 P.3d 120 (2003).” Slip op. at 17. Particularly pertinent here is the admonition that “[a]ll pertinent provisions of an insurance policy must be considered together, rather than in isolation, and given effect.” Lee, 265 Kan. 810, Syl. ¶ 3. Accordingly, we should be construing the entire proviso—“the travel [was] paid for or subject to reimbursement by [Sumner Academy]”—in the context of the entire policy, rather than isolating the words, “subject to reimbursement.”
*154 When read together—paid for or subject to reimbursement by the school—a reasonably prudent insured would have to understand that the policy language is referring to travel expenses for which the school is obligated to pay and for which the student has a right to reimbursement. In statutory construction, we sometimes apply the principle of noscitur a sociis (it is known from its associates). Inthatvein, “subject to reimbursement by the Participating School” should refer to an expense that would be in the same class of expenditures that would be “paid for . . . by the Participating School.” And reasonable people would not understand that class of expenditures to include gratuitous, random payments for personal travel expenses for which the school was not responsible. After all, schools are taxpayer-funded entities. Likewise, one would expect travel expenses to be an operating expense, rather than be paid from an activity fund.
Moreover, reimbursement connotes an indemnification of expenses that die student expended on behalf of or for the benefit of the school. See Black’s Law Dictionary 1476 (10th ed. 2014) (defining “reimbursement” as “1. Repayment. 2. Indemnification.”). And among tire definitions of “subject to” are “liable” and “answerable for,” further suggesting that die reimbursement is not a discretionary act. See Black’s Law Dictionary 1425 (6th ed. 1990). In otirer words, reasonably prudent people would expect to be reimbursed when they pay expenses rightfully charged to another person or entity, but they generally do not expect to be gratuitously paid for expenses that are incurred for their own benefit.
Further, one must presume that the Association purchased the insurance policy for the benefit of its member schools and intended for covered travel to be that which benefitted the school. In that context, one could also presume that the insurer would want to limit its travel exposure to those circumstances over which the school was exercising some oversight, which would occur if the coverage were limited to students who were travelling on a school-provided or school-funded mode of transportation.
Finally, a reasonably prudent insured would not expect that Sumner Academy would be paying for more than one mode of transportation. Here, the school paid for a bus to cariy Rodriguez *155 to the soccer game. Surely, he could not have reasonably expected that the insurance policy language would be interpreted to mean that he could reject the bus ride in favor of another mode of transportation, e.g., a rented stretch limousine, and that the expense of his chosen alternate travel would be “subject to reimbursement by the Participating School.” If such were the case, one would expect a lot of lonely bus drivers.
Notwithstanding the egregious injuries suffered by Rodriguez in this case, it is nevertheless incumbent on this court to construe tire insurance policy in a manner to give effect to the parties’ intent. In that regard, I submit that the reason Sumner Academy had never before had a student request reimbursement for travel expenses under this scenario is that, as reasonably prudent persons, they knew that they were not entitled to be reimbursed. I would find that Rodriguez was not an insured covered by the Mutual of Omaha policy issued to the Association.